451 A.2d 451

**Margaret E. JANICIK, Appellant,**

**v.**

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation.**

Superior Court of Pennsylvania.

Argued April 30, 1981.

Filed Oct. 15, 1982.

Petition for Allowance of Appeal Denied Jan. 24, 1983.

122

Michael P. Malakoff, Pittsburgh, for appellant.

John H. Scott, Jr., Pittsburgh, for appellee.

Before CERCONE, President Judge, and BROSKY and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in denying her petition for class certification. We agree and, accordingly, reverse the order of the court below and certify the class.

■ Appellant is the primary beneficiary of two life insurance policies purchased from appellee by her late husband. The policies, issued in 1964 and 1966, contained identical "family-income benefit riders" providing that she would receive fifty dollars per month under each during the payment period. Each policy defined the payment period as "65 years less years of issue age." Appellant's husband died in 1969 at the age of 51. Appellant commenced this action seeking damages and declaratory relief on March 3, 1977, alleging, individually and as representative of a class of similarly situated beneficiaries, that the payment period should be determined by subtracting from 65 years the insured's age at the times the policies were issued. According to her construction, her payment periods would be nineteen and seventeen years, respectively. Appellee contends, however, that the period should be determined by subtracting from 65 years the insured's age at the time of death, so that appellant's payment periods would both be fourteen years. Following the denial of appellee's preliminary objections, the court below established a class action discovery timetable, held a class certification hearing, and subsequently denied appellant's motion to certify the class. This appeal followed.[1]

1. An order denying class certification is a final and appealable order. *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975).

## I.

 Appellant contends that the lower court abused its discretion in holding that she had failed to meet her burden of proving each of the requirements and criteria for class certification. Pa.R.Civ.P. 1702, 1708, 1709. We agree. A lower court's decision concerning class certification is a mixed finding of law and fact entitled to "appropriate deference" upon appeal. *Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 235, 348 A.2d 734, 739 (1975), *on remand,* 241 Pa.Superior Ct. 192, 360 A.2d 681 (1976).[2] "Trial courts are vested with broad discretion in determining definition of the class as based on commonality of the issues and the propriety of maintaining the action on behalf of the class." *Klemow v. Time, Inc.,* 466 Pa. 189, 197, 352 A.2d 12, 16 (1975). *Accord, Sharkus v. Blue Cross of Greater Philadelphia,* 494 Pa. 336, 342–43, 431 A.2d 883, 886 (1981); *ABC Sewer Cleaning Co. v. Bell of Pennsylvania,* 293 Pa.Superior Ct. 219, 225–226 n. 4, 438 A.2d 616, 619 n. 4 (1981). Consequently, a lower court's order concerning class certification will not be disturbed on appeal unless the court failed to consider the requirements of the rules or abused its discretion in applying them. *See, e.g., Sharkus v. Blue Cross of Greater Philadelphia, supra; Klemow v. Time, Inc., supra; Bell v. Beneficial Consumer Discount Co., supra.* See also *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030 (5th Cir. 1981).[3]

2. Under Pa.R.Civ.P. 1710, 1711, the lower court is required to set forth findings of fact, conclusions of law, and appropriate discussion in a written opinion when certifying, refusing to certify, or revoking a class certification. The better practice, to facilitate management of the action and to ensure meaningful appellate review, is to set forth each of the elements separately as per the form for adjudication in equity under Pa.R.Civ.P. 1517(a). Explanatory Note to Pa.R.Civ.P. 1710.

3. Federal precedent is instructive in construing Pennsylvania's class action rules. *See McMonagle v. Allstate Insurance Co.,* 460 Pa. 159, 167, 331 A.2d 467, 471–72 (1975). Many provisions of Pennsylvania's revised class action rules have been taken virtually verbatim from the federal rules; other provisions are derived from federal case law. Explanatory Note to Pa.R.Civ.P. 1701. Federal class action precedent is not, however, binding upon our courts. *Bell v. Benefi-*

128

## II.

It is beyond peradventure that the burden of proof in a class certification proceeding is upon the party seeking certification. *Klemow v. Time, Inc., supra; Scott v. Adal Corp.,* 276 Pa.Superior Ct. 459, 419 A.2d 548 (1980). *Accord, Zeidman v. J. Ray McDermott & Co., supra; Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). *See generally* 1 H. Newberg, *Newberg on Class Actions* §§ 2075–90 (1977 & Supp.1981). The Pennsylvania Rules of Civil Procedure specify five requirements for class certification—numerosity, common questions of law or fact, typicality, adequacy of representation, and fairness and efficiency. Pa.R.Civ.P. 1702. They specify also certain criteria the court must consider in determining the last two of these requirements. Pa.R.Civ.P. 1708, 1709. The lower court held that appellant failed to meet her burden because she failed to "affirmatively show" facts establishing each of the requirements and criteria for class certification. Such a strict burden of proof is inconsistent with the policy of our Commonwealth that "decisions in favor of maintaining a class action should be liberally made." *Bell v. Beneficial Consumer Discount Co.,* 241 Pa.Superior Ct. 192, 205, 360 A.2d 681, 688 (1976) (after remand) (class suits enable the assertion of many meritorious claims that might not otherwise be litigated). *See Esplin v. Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968) ("in a doubtful case . . . any error should be committed in favor of allowing the class action"). Moreover, courts in class certification proceedings regularly and properly employ reasonable inferences, presumptions, and judicial notice. *See, e.g., Buchanan v. Brentwood Federal Savings & Loan Ass'n,* 457 Pa. 135, 320 A.2d 117 (1974) (form contract raises common questions); *Zeidman v. J. Ray McDermott & Co., supra* (inferences of numerosity); *Piel v. National Semiconductor Corp.,* 86 F.R.D. 357 (E.D.Pa.1980) (counsel presumed competent); *Sol S. Turnoff Drug Distributors, Inc. v. N. V.*

cial *Consumer Discount Co., supra* 465 Pa. at 231 n. 9, 348 A.2d at 737 n. 9.

*Nederlandsche Combinatie Voor Chemische Industrie,* 51 F.R.D. 227 (E.D.Pa.1970) (absence of conflict of interest presumed). When the underlying facts are not in dispute, the court may hold the burden more easily satisfied. *Ablin v. Bell Telephone Co. of Pennsylvania,* 291 Pa.Superior Ct. 40, 50 n. 5, 435 A.2d 208, 214 n. 5 (1981); *Wolfson v. Solomon,* 54 F.R.D. 584, 591 (S.D.N.Y.1972). The court should take into account the practical inability of the class representative to identify other class members when the class opponent is in control of and refuses to provide the names and addresses of absent class members. *Garnet Valley School District v. Hanlon,* 15 Pa.Commonwealth Ct. 476, 327 A.2d 215 (1974); *Gatling v. Butler,* 52 F.R.D. 389 (D.Conn.1971); *Herbst v. Able,* 47 F.R.D. 11 (S.D.N.Y.1969), *amended,* 49 F.R.D. 286 (1970). Finally, the stage of proceedings at which the class certification is to be initially determined and the trial court's extensive supervisory powers over class actions obviate the need for a strict burden of proof. A court may not make the initial class action determination until after the close of pleadings to ensure that the class proponent is presenting a non-frivolous claim capable of surviving preliminary objections. Pa.R.Civ.P. 1707; *Falkenhan v. Wise,* 282 Pa.Superior Ct. 318, 326, 422 A.2d 1135, 1140 (1980). Throughout the class action, the court has extensive powers to protect absent class members and to ensure the efficient conduct of the action. *See, e.g.,* Pa.R. Civ.P. 1710 (subclasses and limiting issues); 1713 (conduct of actions); 1714 (approving settlements); 1716 (approving counsel fees); *Ablin, Inc. v. Bell Telephone Co. of Pennsylvania, supra* (limiting class); *McKenna v. Commonwealth,* 54 Pa.Commonwealth Ct. 338, 421 A.2d 1236 (1980) (counsel fees). The court may alter, modify, or revoke the certification if later developments in the litigation reveal that some prerequisite to certification is not satisfied. Pa.R.Civ.P. 1710, 1711; *Oas v. Commonwealth,* 8 Pa.Commonwealth Ct. 118, 301 A.2d 93 (1973).

Once the class action allegations are well-pleaded, as was conceded here, the class proponent at the class

certification hearing must present evidence of the underlying facts from which the court can conclude that the five class certification requirements are met. *See Ablin, Inc. v. Bell Telephone Co. of Pennsylvania, supra; Zeidman v. J. Ray McDermott & Co., supra.* *Cf.* Pa.R.Civ.P. 2329 (petition to intervene) (also requires hearing, intervenor's burden met upon prima facie showing). Because the requirements for class certification are closely interrelated and overlapping, the class proponent need not prove separate facts supporting each; rather, her burden is to sufficiently establish those underlying facts from which the court can make the necessary conclusions and discretionary determinations. *See, e.g., Ablin, Inc. v. Bell Telephone Co. of Pennsylvania, supra* 291 Pa.Superior Ct. at 40, 435 A.2d at 212 (typicality requirement closely akin to commonality and adequacy of representation); *Piel v. National Semiconductor Corp., supra* (same). *Cf.* 1 H. Newberg, *Newberg on Class Actions, supra* §§ 2075–90. Though this initial burden is not heavy, it requires more than mere conjecture, and conclusory allegations, especially if facts of record tend to contradict the propriety of the class action. *Luitweiler v. Northchester Corp.,* 456 Pa. 530, 319 A.2d 899 (1974); *Valentino v. Howlett,* 528 F.2d 975 (7th Cir. 1976); *Rossin v. Southern Union Gas Co.,* 472 F.2d 707 (10th Cir. 1973). Well-pleaded class action allegations, if admitted by the class opponent, may be considered as evidence at the class certification hearing. Pa.R.Civ.P. 1706. The prima facie showing shifts to the class opponent the burden of coming forward with contrary evidence, and absent such, would ordinarily satisfy the class proponent's burden. *Bell v. Beneficial Consumer Discount Co., supra; Wolfson v. Solomon, supra.* *Accord, McMonagle v. Allstate Insurance Co.,* 227 Pa.Superior Ct. 205, 233, 324 A.2d 414, 428 (1974) (HOFFMAN, J., dissenting) (upon well-pleaded complaint setting forth class action elements "with some precision" class action should be presumed valid until proven otherwise), *citing Penn Galvanizing Co. v. Philadelphia,* 388 Pa. 370, 130 A.2d 511 (1957). If there is an actual conflict on an essential fact, the class proponent bears the risk of non-persuasion.

## III.

Rule 1702 of the Pennsylvania Rules of Civil Procedure states the five prerequisites to class certification:

One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

### 1. Numerosity

Appellant purports to represent a class of beneficiaries of "family-income benefit" riders issued by appellee. To be eligible for certification, she must establish that the class is "so numerous that joinder of all members is impracticable." Pa.R.Civ.P. 1702(1). Whether the number is so large as to make joinder impracticable is dependent "not upon any arbitrary limit, but rather upon the circumstances surrounding [each] case." 3B J. Moore, *Federal Practice and Procedure*, § 23.05 (19). In determining numerosity, the court should examine "whether the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants." *Temple University of the Commonwealth System of Higher Education v. Pennsylvania Department of Public Welfare*, 30 Pa.Commonwealth Ct. 595, 603, 374 A.2d 991, 996 (1977). *Accord, ABC Sewer Cleaning Co. v. Bell of Pennsylvania, supra* 291 Pa. Superior Ct. at 40 n. 6, 438 A.2d at 621 n. 6; *Ablin, Inc. v.*

*Bell Telephone Co. of Pennsylvania, supra* 291 Pa.Superior Ct. at 40 n. 5, 435 A.2d at 214 n. 5. The class representative need not plead or prove the number of class members so long as she is able to define the class with some precision and affords the court with sufficient indicia that more members exist than it would be practicable to join. *Zeidman v. J. Ray McDermott & Co., supra.* Although appellant was unable to prove the number of class members she did present evidence which, together with reasonable inferences, would warrant a conclusion that the class was sufficiently numerous. The record reveals the following facts: Appellee had sold over five million life insurance policies, at least 120,000 of which contained some form of a monthly benefit provision. The particular form sold to appellant's husband was optional to all the policies and was available at all 136 of appellee's Pennsylvania agencies. Appellee's seven other forms contain virtually identical definitions of the payment period. Appellee admittedly interprets all of them similarly. Appellee controls the names and addresses of the policy-holders and their beneficiaries, but its mode of record-keeping does not readily permit a determination of precisely how many policies contain a particular form of the rider.[4] *See Wolfson v. Solomon, supra* at 591 ("court may assume sufficient numerousness [*sic*] where reasonable to do so, in absence of a contrary showing by the class opponent"); *Gatling v. Butler, supra* at 392 (class opponent controlled records and state confidentiality statute restricted disclosure; class certified). Accordingly, appellant has satisfied the numerosity requirement.

2. Common Questions of Law or Fact (Commonality)

▇▇▇ Appellant must establish that her claim presents "questions of law or fact common to the class." Pa.R.Civ.P.

---

**4.** Appellant's not accepting appellee's offer that she could manually search its files under a protective order does not prejudice her petition for class certification, because she submitted sufficient other evidence of numerosity. *But cf. Reichlin v. Wolfson,* 47 F.R.D. 537 (S.D.N.Y.1969) (that class representative did not avail himself of reasonable discovery opportunity a factor in denying class certification).

1702(2). The existence of individual questions essential to a class member's recovery is not necessarily fatal to the class, and is contemplated by the rules. *See* Pa.R.Civ.P. 1708(a)(1) (whether common questions "predominate" over individual ones), 1710 (power to limit issues); *Klemow v. Time, Inc., supra* 466 Pa. at 197 n. 17, 352 A.2d at 16 n. 17 (class members may also proceed separately with individual claims). Common questions will generally exist if the class members' legal grievances arise out of the "same practice or course of conduct" on the part of the class opponent. *Ablin, Inc. v. Bell Telephone Co. of Pennsylvania, supra* 291 Pa.Superior Ct. at 40, 435 A.2d at 213.[5] Claims arising from interpretations of a form contract generally give rise to common questions. *See Ross v. Shawmut Development Corp.,* 460 Pa. 328, 334, 333 A.2d 751, 753 (1974); *Buchanan v. Brentwood Federal Savings & Loan Ass'n, supra,* 457 Pa. at 160, 320 A.2d at 131 (form mortgages). *Cf. Herbst v. Able, supra* (reliance on written statements a common question). "[C]lass actions may be maintained even when the claims of members of the class are based on different contracts" so long as "the relevant contractual provisions raise common questions of law and fact and do not differ materially." *Sharkus v. Blue Cross of Greater Philadelphia, supra* 494 Pa. at 343, 431 A.2d at 886. *Accord, Buchanan v. Brentwood Federal Savings & Loan Ass'n, supra.* If later refinement of the issues reveals that seemingly similar contractual provisions merit differing interpretations, the court may create appropriate subclasses. Pa.R.Civ.P. 1710(c)(2); *Sharkus v. Blue Cross of Greater Philadelphia, supra.* Appellant's claim on behalf of the class is limited to the interpretation of the language governing the duration of benefits. All eight riders have virtually identical language defining the duration of benefits, and appellee admits apply-

5. If, however, the challenged conduct affects the potential class members in such divergent ways, aggrieving some, benefitting others, that their interests become antagonistic to each other, commonality may not exist. *Samuels v. Smock,* 54 Pa.Commonwealth Ct. 597, 422 A.2d 902 (1980) (retirement policy); *William Goldman Theaters, Inc. v. Paramount Film Distributing Corp.,* 49 F.R.D. 35 (E.D.Pa.1969) (film distribution policy). *See* note 6 *infra.*

ing a similar interpretation to all of them. Under these circumstances, we are satisfied that there are questions of law and fact common to the class of beneficiaries.

### 3. Typicality

Appellant must show that her "claims or defenses . . . are typical of the claims or defenses of the class." Pa.R.Civ.P. 1702(3). The typicality requirement is closely akin to the requirements of commonality and the adequacy of representation. *Ablin, Inc. v. Bell Telephone Co. of Pennsylvania, supra* 291 Pa.Superior Ct. at 40, 435 A.2d at 212. Its purpose is to determine whether the class representative's overall position on the common issues is sufficiently aligned with that of the absent class members to ensure that her pursuit of her own interests will advance those of the proposed class members. *Id.; Piel v. National Semiconductor Corp., supra. Accord, Luitweiler v. Northchester Corp., supra* 456 Pa. at 534, 319 A.2d at 902 (must appear that relief sought beneficial to all class members); *Penn Galvanizing Co. v. Philadelphia, supra* 388 Pa. at 378, 130 A.2d at 515 (same).[6] Of the two reasonable interpretations of the contract language in dispute, appellant advances that affording the greater benefits. Her self-interest is thus squarely aligned with that of the absent members of the class of beneficiaries. *Cf. Pincus v. Mutual Assurance Co.,*

**6.** Typicality might not be satisfied when the relief sought will benefit some proposed class members and harm others, *Samuels v. Smock, supra; William Goldman Theaters, Inc. v. Paramount Film Distributing Corp., supra,* or when the class representative has or is pursuing some other interest divergent from or adverse to the interests of the absent class members. *Penn Galvanizing Co. v. Philadelphia, supra* (representative's interest adverse to absent class members); *Samuels v. Smock, supra* (representative's eligibility for the subject retirement benefits being separately litigated and his interest in pension fund not shown to be substantially similar to the absent class members'); *Puharich v. Borders Electronics Co.,* CCH Fed. Sec. p. 92, 160 (class action on behalf of shareholders clearly of secondary importance to representatives' unique derivative claims). *But cf. Marshall v. Holiday Magic, Inc.,* 550 F.2d 1173, 1177 (9th Cir. 1977) (class of distributors in pyramid scheme against parent company) (that some class members have claims against each other does not detract from their identical legal and factual claim against the class opponent).

457 Pa. 94, 98, 321 A.2d 906, 909 (1974) (both reasonable positions represented in class suit). Appellee argues, however, that appellant is atypical because her deposition testimony reveals her mistaken belief that she may win lifelong benefits in accordance with a salesman's alleged oral representations. Contrary to appellee's assertion, this possible alternative claim does not dilute her interest in pursuing a favorable interpretation of the written contract on behalf of herself and the class. *See* Pa.R.Civ.P. 1710(c)(1) (court may limit class action to particular issues or forms of relief). Accordingly, appellant has satisfied the typicality requirement.

### 4. Adequacy of Representation

For the class to be certified, the court must conclude that appellant "will fairly and adequately assert and protect the interests of the absent class members." Pa.R.Civ.P. 1702(4). To make this determination the court must consider: (1) whether the attorney for the representative party will adequately protect the class's interests; (2) whether the representative parties have a conflict of interest in maintaining the action; (3) whether the representative parties "have or can acquire" adequate financial resources; and (4) "other matters." Pa.R.Civ.P. 1709.

■ Preliminarily, "[a] litigant must be a member of the class which he or she seeks to represent at the time the class is certified by the . . . court" in order to ensure due process to the absent class members and to satisfy requirements of standing. *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532, 542 (1975). *See McMonagle v. Allstate Insurance Co., supra,* 460 Pa. at 167, 331 A.2d at 472 (appellant never eligible for claimed benefits); *Alessandro v. State Farm Mutual Insurance Co.,* 259 Pa.Superior Ct. 571, 579–82, 393 A.2d 973, 977–78 (1978) (appellant not member of defined class), *rev'd in part on other grounds,* 487 Pa. 274, 282 n. 11, 409 A.2d 347, 351 n. 11 (1979).[7] Appellant is

7. Courts may, however, entertain a class action even if the representative's claim is rendered moot by the passage of time or an attempt-

concededly eligible for benefits under the policies in question, and thus clearly a member of the class she seeks to represent. She is thus potentially an adequate class representative.

### a. Attorney's Adequacy

 Generally, "[u]ntil the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession." *Dolgow v. Anderson,* 43 F.R.D. 472, 496 (E.D.N.Y.1968). *Accord, Piel v. National Semiconductor Corp., supra.* Courts may also infer the attorney's adequacy from the pleadings, briefs, and other material presented to the court, or may determine these warrant further inquiry. *See Alessandro v. State Farm Mutual Automobile Insurance Co., supra,* 259 Pa.Superior Ct. at 581–82, 393 A.2d at 978; *Moss v. Lane Co.,* 471 F.2d 853, 855 (4th Cir. 1973). Counsel's adequacy was not disputed, and the record suggests only high standards of professionalism in their advocacy.[8] Accordingly, appellant's counsel should be considered adequate to protect the absent class members' interests.

### b. No Conflict of Interest

The lower court suggested many possible conflicts of interest or hidden collusive circumstances (such as family or financial ties to appellee) that appellant might have attempted to disprove. Because of the difficulty of proving a negative, courts have generally presumed that no conflict of interest exists unless otherwise demonstrated, and have re-

ed separate settlement, *see McMonagle v. Allstate Insurance Co., supra,* 460 Pa. at 168–69, 331 A.2d at 472; *cf. Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). If the original representative is decertified, courts may also keep the action pending to permit the remaining class members to seek another representative. *Alessandro v. State Farm Mutual Automobile Insurance Co., supra,* 487 Pa. at 282 n. 11, 409 A.2d at 351 n. 11.

**8.** Moreover, several courts have taken notice of appellant's counsel's adequacy to litigate class actions. *See, e.g., Stavrides v. Mellon Bank, N.A.,* 69 F.R.D. 424, 430 (W.D.Pa.1975); *Mason v. Calgon Corp.,* 63 F.R.D. 98, 107 (W.D.Pa.1974); *Alessandro v. State Farm Mutual Insurance Co., supra,* 487 Pa. at 282, 409 A.2d at 351.

lied upon the adversary system and the court's supervisory powers to expose and mitigate any conflict. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Gilchrist v. Bolger*, 89 F.R.D. 402 (M.D.Ga.1981); *Sol S. Turnoff Drug Distributors, Inc. v. N.V. Nederlandsche Combinatie Voor Chemische Industrie, supra. See also Herbst v. Able, supra* (no reason to suspect a conflict, those suggested are more academic than real).[9] Nothing in this record suggests the slightest conflict of interest in appellant's maintaining this action.

c. Adequate Financial Resources

■ "[T]o assure that the interests of the class will not be harmed" the court must consider whether the representative parties "have or can acquire adequate financial resources" to prepare the litigation and carry it to completion. Pa.R. Civ.P. 1709(3); Explanatory Note to Pa.R.Civ.P. 1709. Appellant's counsel submitted an affidavit that it would advance all costs of the litigation, but that appellant would remain ultimately liable for them. There was no dispute as to counsel's ability to advance the needed funds. The lower court determined that appellant would be unable to repay counsel if unsuccessful. Initial funding by the class representative's attorney is not uncommon in class suits, *see, e.g., Sanderson v. Winner*, 507 F.2d 477 (10th Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975); *Sayre v. Abraham Lincoln Federal Savings & Loan Ass'n*, 65 F.R.D. 379 (E.D.Pa.1974) *amended*, 69 F.R.D. 117 (M.D.Pa. 1975), nor is it barred by the Code of Professional Responsibility, *see* Code of Professional Responsibility, DR 5–103(B),

9. Courts have repeatedly held it a disqualifying conflict of interest for the representative party to serve in a dual capacity as both class representative and class counsel, *Murphy v. Harleysville Mutual Insurance Co.*, 282 Pa.Superior Ct. 244, 422 A.2d 1097 (1980), *cert. denied*, 454 U.S. 896, 102 S.Ct. 395, 70 L.Ed.2d 211 (1981). Nor in most circumstances may the class representative be an associate or employee of the class counsel. *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir. 1976); *Charal v. Andes*, 81 F.R.D. 99 (E.D.Pa. 1979); *Hernandez v. United Fire Insurance Co.*, 79 F.R.D. 419 (N.D. Ill.1978).

EC 5–1, 5–7, 5–8; *cf. Selby v. Brown,* 291 Pa.Superior Ct. 463, 437 A.2d 767 (1981). Some courts have held that theorizing on whether the representative party will repay the class attorney if the class loses is irrelevant to the sole question of whether the interests of the class are being adequately protected. *Sanderson v. Winner, supra* (barring discovery into representative's financial status when counsel agrees to advance costs of litigation); *Sayre v. Abraham Lincoln Federal Savings & Loan Ass'n, supra* (same). Others, however, have held that considerations analogous to the Code of Professional Responsibility's prohibiting an attorney from maintaining an action—to prevent the attorney from acquiring such a financial stake in the litigation that he may be induced to compromise his client's interests by settling the action prematurely—apply also to protect the absent class members' interests. *See, e.g., National Auto Brokers Corp. v. General Motors Corp.,* 376 F.Supp. 620 (S.D.N.Y. 1974) *aff'd* 572 F.2d 953 (2d Cir. 1978), *cert. denied* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979); *Ralston v. Volkswagenwerk A.G.,* 61 F.R.D. 427 (W.D.Mo.1973). *See also P.D.Q., Inc. v. Nissan Motor Corp.,* 61 F.R.D. 372 (S.D.Fla. 1973) (limiting class size).[10] The dangers of the potential conflict of interest arising from counsel's financing a class suit, however, must be viewed realistically in light of the circumstances and the procedural safeguards inherent in class suits. Overly strict financing requirements would limit the class action to wealthy litigants, contrary to its purposes. *Bartelson v. Dean Witter & Co.,* 86 F.R.D. 657 (E.D.Pa.1980). *Cf.* Pa.R.Civ.P. 1708(6) (individual class members' inability to bring separate actions relevant to class certification decision).[11] A lack of funding by the representative plaintiff,

10. Some courts have held maintenance of class suits by legal aid societies or legal services organizations to be less strictly limited by the Code of Professional Responsibility than would be such funding by private attorneys. *Aguirre v. Bustos,* 89 F.R.D. 645 (D.N.M.1981); *Brame v. Ray Bills Finance Corp.,* 85 F.R.D. 568 (N.D.N.Y.1979).

11. "It has been said that the entire 'historic mission' of the class action is to take 'care of the smaller guy.' Frankel, Amended Rule 23 from a Judge's Point of View, 32 Antitrust L.J. 295, 299 (1966)."

without more, is not sufficient to warrant denial of class certification. *Rode v. Emery Air Freight Corp.,* 76 F.R.D. 229 (W.D.Pa.1977), citing 3B J. Moore, *supra* § 23.07 (adequacy of representation depends on all circumstances). When a member of a generally impecunious group advances a class action for relatively small individual claims, denying the class action for lack of financial resources might "result in a denial of any recovery to members of the class." Explanatory Note to Pa.R.Civ.P. 1709. The danger of premature settlement arising from an attorney's advancing costs is minimized in class actions, however, because the court must approve any settlement agreement or award of attorney's fees, Pa.R.Civ.P. 1716, 1718; *McKenna v. Commonwealth, supra,* and can take appropriate action if counsel's representation proves inadequate, Pa.R.Civ.P. 1713. *See Bartelson v. Dean Witter & Co., supra; Chevalier v. Baird Savings Ass'n,* 72 F.R.D. 140 (E.D.Pa.1976); Developments in the Law—Class Actions, 89 Harv.L.Rev. 1317, 1622–23 (1976).[12] Under the circumstances, particularly the nature of the class and appellant's counsel's agreement and apparent ability to ethically advance costs, we hold that appellant's own limited financial resources are not necessarily fatal to her adequacy as a class representative.

### d. Other Matters

The lower court held that appellant's lack of personal knowledge about the lawsuit, as indicated by her apparent mistaken belief that the action included claims based on a salesman's oral representations, rendered her unable to adequately supervise or assist class counsel, and thus an inadequate class representative. "[A] class representative need not be the best of all possible representatives

*McMonagle v. Allstate Insurance Co., supra,* 227 Pa.Superior Ct. at 213 n. 12, 324 A.2d at 424 n. 12 (HOFFMAN, J. dissenting).

**12.** We are cognizant that an attorney's advancing litigation costs may raise different inferences about adequacy of representation when the representative party is able but unwilling to bear litigation costs. *See, e.g., Charal v. Andes, supra; Chevalier v. Baird Savings Ass'n, supra.*

but rather one that will pursue a resolution of the controversy with the requisite vigor and in the interest of the class." *Piel v. National Semiconductor Corp.,* supra at 366. Courts should not impose unrealistically high burdens of knowledge or ability to supervise counsel, for to do so would render the class action an impotent tool or deny it to those most in need. *See, e.g., Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (one uneducated in economics adequate class representative in antitrust action); *Aguirre v. Bustos,* 89 F.R.D. 645 (D.N.M.1981) (uneducated laborers adequate to represent class in employment wages claim); *Chevalier v. Baird Savings Ass'n, supra* (mortgagors with sketchy idea of lending practices adequate). Evidence of dishonesty, bad character, disregard of duties, abdication to the unfettered discretion of class counsel, or of having been solicited to be class representative by counsel who are conducting the suit for their own gain, will all weigh against the named party's adequacy as a representative. *See Charal v. Andes,* 81 F.R.D. 99 (E.D.Pa.1979); *Hernandez v. United Fire Insurance Co.,* 79 F.R.D. 419 (N.D.Ill.1978); *Chevalier v. Baird Savings Ass'n, supra.* In contrast, evidence of honesty, willingness to pursue the matter, knowledge of facts underlying the action, understanding of the essence of the legal claim, a desire to right a perceived wrong, or the hope of recovery will all support a named party's adequacy as a representative. *Aguirre v. Bustos, supra; Chevalier v. Baird Savings Ass'n, supra.* Appellant's deposition testimony displayed she had some confusion about the nature of this action. Nonetheless she also indicated her first-hand knowledge of the facts underlying the action, her understanding that the essence of the lawsuit was to seek a longer payment period, and her hope for recovery and willingness to tenaciously pursue it. Accordingly, we conclude that appellant sufficiently demonstrated her adequacy as a class representative.

### 5. Fairness and Efficiency of Class Action

■ The final general requirement for class certification is that a class action provide "a fair and efficient method for

adjudication of the controversy." Pa.R.Civ.P. 1702(5). Several criteria must guide the court in this determination. Pa.R.Civ.P. 1708. They are not exclusive and their importance may vary according to the circumstances. *Id.; Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3d Cir. 1974) *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1975). In determining fairness and efficiency, the court must balance the interests of the litigants, present and absent, and of the court system. *See ABC Sewer Cleaning Co. v. Bell of Pennsylvania, supra,* 291 Pa.Superior Ct. at 227, 438 A.2d at 621; *McMonagle v. Allstate Insurance Co., supra,* 227 Pa.Superior Ct. at 233, 324 A.2d at 428 (HOFFMAN, J., dissenting). Courts should not strike this balance so harshly as to "eviscerate the purposes of the class action device." *Scott v. Adal Corp., supra,* 276 Pa.Superior Ct. at 466, 419 A.2d at 552. Unlike in federal class action litigation, class actions brought under the Pennsylvania rules need not be "superior" to alternative methods. *Compare* Fed.R.Civ.P. 23(b) *with* Pa.R.Civ.P. 1702(5). *See* Explanatory Note to Pa.R.Civ.P. 1708.[13] Rather, courts should strike the balance mindful that the class action is inherently a "procedural device designed to promote efficiency and fairness in handling large numbers of similar claims." *Lilian v. Commonwealth,* 467 Pa. 15, 21, 354 A.2d 250, 253 (1976).

### a. Common Questions Predominate

■ "[W]hether common questions of law or fact predominate over individual questions," Pa.R.Civ.P. 1708(a)(1), is closely akin to the requirement that sufficient common questions exist to support the class action, Pa.R.Civ.P. 1702(2). Individual questions, even those essential to recovery, are not necessarily fatal to the class action. *See, e.g., Cross v. National Trust Life Insurance Co.,* 553 F.2d 1026

---

13. Thus Pennsylvania courts need not speculate whether a "test case" might be a better method of resolving a given dispute. *Cf., Katz v. Carte Blanche Corp., supra* (considering whether test case would be superior to class action). However, the existence of a readily available, inexpensive, and efficient alternative method of obtaining the relief may be a factor militating against a class action. *Samuels v. Smock, supra.*

(6th Cir. 1977). It is well established, for example, that individual questions as to the amount of damages do not preclude a class action. *Sharkus v. Blue Cross of Greater Philadelphia, supra; Ross v. Shawmut Development Co., supra; ABC Sewer Cleaning Co. v. Bell of Pennsylvania, supra.* The common question of the interpretation of the form contract is critical to the recovery sought here. Although a resolution in favor of the class would leave individual questions of eligibility and amount of damages, a determination in favor of appellee could moot those individual questions. Consequently, we are satisfied that the common questions here predominate, and thus suggest the fairness and efficiency of this class action.

### b. Manageable Controversy

In determining the fairness and efficiency of a class action the court must consider "the size of the class and the difficulties likely to be encountered in the management of the action as a class action." Pa.R.Civ.P. 1708(a)(2). Problems of administration alone, however, ordinarily should not justify the denial of an otherwise appropriate class action, for to do so would contradict the policies underlying this device. *Yaffe v. Powers,* 454 F.2d 1362, 1365 (1st Cir. 1972). *Accord,* Explanatory Note to Pa.R.Civ.P. 1708 (manageability criterion should not be employed as an "escape hatch" to defeat otherwise proper class action); Manual for Complex Litigation, § 1.43 (1981). Rather, the court should rely on the ingenuity and aid of counsel and upon its plenary authority to control the action to solve whatever management problems the litigation may bring. *Buchanan v. Brentwood Federal Savings & Loan Ass'n, supra,* 457 Pa. at 161, 320 A.2d at 131; *In re Antibiotic Antitrust Actions,* 333 F.Supp. 278, 282–83 (S.D.N.Y.1971); Newberg, *supra,* § 2100. The evidence here indicated that the names, addresses, and insurance records of all potential class members were centrally stored by appellee. Consequently, management problems unique to the class procedure would not be unduly burdensome in this action.

### c. Risks of Inconsistent Adjudications

The court must also consider the risks of inconsistent adjudication from both the plaintiff's and defendant's viewpoints. It must consider whether separate actions (1) would "confront the party opposing the class with incompatible standards of conduct," Pa.R.Civ.P. 1708(a)(3)(i), or (2) would, "as a practical matter," be dispositive of the interests of absent potential class members or otherwise "substantially impair or impede their ability to protect their interests," Pa.R.Civ.P. 1708(a)(3)(ii). Finding such risks is not essential to certifying the class, but "if they exist, they will be forceful arguments in support of the approval of the class action." Explanatory Note to Pa.R.Civ.P. 1708. The court below held that the principle of *stare decisis* and proper application of fundamental contract principles would eliminate any risks of inconsistent adjudications. Such reasoning ignores the rule's exhortation to address this consideration "as a practical matter." Pa.R.Civ.P. 1708(a)(3)(ii). Courts may, and often do, differ in resolving similar questions presenting issues of law or fact. The precedential effect of a decision, even if incorrect, may have a chilling effect on the assertion of similar claims, and, combined with the expiring of statutes of limitation, may often "substantially impair or impede" potential litigants' ability to protect their interests. *Id.* Moreover, as with the related criteria concerning the complexity and expenses of litigation, Pa.R. Civ.P. 1708(a)(6), the court may consider the parties' circumstances and respective ability to pursue separate actions. *Cf. Scott v. Adal Corp., supra; Hohmann v. Packard Instrument Co.,* 399 F.2d 711 (7th Cir. 1968). Appellee conducts business statewide and may thus be subject to inconsistent standards of conduct. Many class members, especially those with smaller claims, may be unable to afford the costs of protecting their interest through separate actions. All claims arise from interpretation of virtually identical contract language, so that even a small risk of inconsistent adjudications is unnecessary. The class action, when compared to separate actions under this criterion, affords the

speedier and more comprehensive statewide determination of the claim, and thus, the better means to ensure recovery if the claim proves meritorious or to spare appellee repetitive piecemeal litigation if it does not.[14]

### d. Complexity of Issues or Expenses Deterring Separate Actions

The court must consider whether the "complexity of issues" or "expenses of litigation" are so burdensome that, upon comparison, the amounts of individual class members' claims "are insufficient to support separate actions." Pa.R. Civ.P. 1708(a)(6). Appellant's claim is for approximately $4,000. Resolving the underlying contract interpretation issue will not require expert witnesses or extensive discovery. From the nature of the question in dispute, it can be inferred that the amounts of class members' claims will vary greatly. This criterion, like the others, must be considered realistically in light of the circumstances. To prevail on individual claims, class members would be forced to retain separate counsel and pay court costs, thus duplicating expenses. Moreover, small, but meritorious, claims may go unlitigated. Further, there is a possibility that appellee would simply settle appellant's individual claims, preventing an adverse decision on the merits, and thereby precluding effective relief to many. *See Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427

---

**14.** In determining fairness and efficiency, the court must consider "the extent and nature of any litigation already commenced by or against members of the class involving any of the same issues." Pa.R.Civ.P. 1708(a)(4). This is a criterion of limited relevance, applicable primarily to cases in which many similar claims are filed, as after a mass tort, or in which competing class actions have been initiated. Explanatory Note to Pa.R.Civ.P. 1708. At the time of the certification hearing, no other actions had been filed concerning this question. The court must also consider "whether the particular forum is appropriate for the litigation of the claims of the entire class." Pa.R.Civ.P. 1708(a)(5). Our Supreme Court has held that a common pleas court may exercise jurisdiction over absent class members who are Pennsylvania residents, as well as those non-residents who submit themselves to its jurisdiction. *Klemow v. Time, Inc., supra* 466 Pa. at 197 n. 15, 352 A.2d at 16 n. 15. *See* Pa.R.Civ.P. 1711. Accordingly, Allegheny County common pleas court is an appropriate forum for this litigation.

(1980) (defendant attempts to settle representative plaintiff's individual claim after denial of class certification). The mere possibility that class members may maintain individual actions is not necessarily fatal to class certification. *See Scott v. Adal Corp., supra* (possibility of individual challenges to sheriff's sales not preclude class action). In many cases, "[t]o permit a defendant to contest liability with each claimant in a single, separate suit would . . . give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit procedure was to prevent." *Hohmann v. Packard Instrument Co., supra* at 715. Forcing multiple individual claims might not only be potentially unfair to the litigants, but it could prove inefficient, for if the numerous beneficiaries did eventually bring individual suits it could unnecessarily clog court dockets with repetitive litigation. Accordingly, despite the relative simplicity of the substantive issue and seeming inexpensiveness of adjudicating its merits, a review of all the circumstances under this criterion indicates that a class action is a fair and efficient method of adjudicating this controversy.

### e. De Minimis Individual Recovery

The court must consider "whether it is likely that the amount which may be recovered by the individual class members will be so small in relation to the expenses and effort of administering the action as not to justify a class action." Pa.R.Civ.P. 1708(a)(7). The nature of the claim is such that, should the class prevail, its members would generally receive more than trivial sums. Moreover, it is unlikely that the costs of requisite notice to class members would be disproportionate to the size of their claims. Consequently, this action may yield sufficient benefits to the class members to justify its use of judicial resources.

### f. Opponent's Conduct Generally Applicable

Because appellant seeks declaratory relief, the court must also consider "whether the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory

relief appropriate with respect to the class." Pa.R.Civ.P. 1708(b)(2). Appellee concedes that it applies a similar interpretation to all eight insurance riders in question, thus satisfying this criterion.

## IV.

For the foregoing reasons we are satisfied that this case is appropriate for disposition as a class action and, accordingly, we reverse the court below and enter the following order:

1. Appellant, MARGARET E. JANICIK, is hereby certified as the representative of a class defined as followed: All persons who after March 3, 1971 and before the entry of final judgment in this case received, were entitled to receive, or become entitled to receive benefits from appellee, PRUDENTIAL INSURANCE COMPANY, pursuant to family-income benefit provisions on forms B 132, B 135, G 132 P, E 132 P, G 135 P, G 139 P, G 171 P, and E 183 P, or any substantially similar form, or policy schedule providing for benefits to be paid for a period computed as "65 [or some other number of] years less years of issue age."

2. Exclusion and Inclusion.

(a) All Pennsylvania residents who are members of the class defined above shall be included in this action unless such member files of record a written election to be excluded from the class.

(b) All members of the class defined above who are not Pennsylvania residents shall be excluded from this action unless such member files of record a written election to be included in the class.[15]

---

**15.** Appellee asserts in a reargument petition that the parties had stipulated by exchange of letters that appellant sought only to represent a class of Pennsylvania residents. The letters do not appear in the record before us. Limiting this class to Pennsylvania residents would not change our analysis or decision regarding numerosity or the propriety of this class action. If appellant seeks only to represent Pennsylvania residents, or if the parties have indeed stipulated, the lower court should be informed and requested to modify this order accordingly. *See* Order ¶ 4, *infra.*

3. The court below shall approve the notice to be sent to each category of members defined in paragraphs 1 and 2 above, Pa.R.Civ.P. 1712, and shall specify the date for filing the appropriate election to be included in or excluded from the class.

4. This Order is without prejudice to the lower court's power to alter, amend, or supplement it as may be appropriate under the circumstances from time to time, Pa.R.Civ.P. 1710, 1713.

5. The matter is remanded for proceedings consistent with this Opinion.